JOLLEY v. McCLAIN
2025 OK 6
Case Number: 122114
Decided: 01/22/2025
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2025 OK 6, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

 

 

CHRISTOPHER CHARLES JOLLEY, a single person, Petitioner, and OKLAHOMA HERITAGE BANK, Real Party in Interest/Defendant,
v.
THE HONORABLE LAURA McCLAIN, District Judge of the District Court of Garvin County, STATE OF OKLAHOMA, Respondent, and STATE OF OKLAHOMA, ex rel. DEPARTMENT OF TRANSPORTATION, Real Party in Interest/Plaintiff.

¶0 Petitioner, Christopher Charles Jolley (Jolley), seeks extraordinary relief from this Court to vacate Judge Laura McClain's order quashing a subpoena duces tecum. Jolley sent the subpoena to the Oklahoma Department of Transportation's (ODOT) expert property appraiser in an attempt to discover how much income the appraiser has received as an expert witness in past. We assumed original jurisdiction, Okla. Const. Art. 7 § 4, and now hold that issuance of a subpoena duces tecum is not among the methods prescribed by the Oklahoma Discovery Code by which an expert witness's financial information may be discovered.

ORIGINAL JURISDICTION PREVIOUSLY ASSUMED;
WRIT OF PROHIBITION DENIED

Brett Agee, Jacob Yturri, Pauls Valley, Oklahoma, for Petitioner Jolley and Real Party in Interest, Oklahoma Heritage Bank.

Michael W. Phillips, Assistant General Counsel, Oklahoma Department of Transportation, Oklahoma City, Oklahoma, for Respondent Judge and Real Party in Interest, Oklahoma Department of Transportation.

KUEHN, V.C.J.:

¶1 The issue presented in this appeal is whether an expert witness's income is discoverable through a subpoena duces tecum. We hold that it is not. The Oklahoma Discovery Code prescribes the methods available to discover financial motive, as relevant to bias, on the part of expert witnesses, and a subpoena duces tecum is not among them.

PROCEDURAL HISTORY

¶2 Real Party in Interest, the Oklahoma Department of Transportation (ODOT), attempted to acquire a strip of land owned by Petitioner, Christopher Charles Jolley (Jolley). When ODOT's efforts to purchase the property failed, it instituted a condemnation action against Jolley in the District Court of Garvin County. Consistent with Oklahoma law on such proceedings, ODOT sought the appointment of three disinterested freeholders to serve as commissioners who would appraise the property in question. See generally 69 O.S. § 1203

¶3 The commissioners valued the property at $15,310.00. Jolley filed a demand for a jury trial. ODOT's preliminary witness list named Robert Grace (Grace) as its expert appraiser. In November 2023, Jolley mailed a subpoena duces tecum to Grace and ODOT.any government client, for any reason. ODOT moved to quash or modify the subpoena, arguing that it was outside the scope of discovery allowed by the Oklahoma Discovery Code. Jolley filed a response to the motion to quash, claiming ODOT lacked standing to object to a subpoena issued to a third party, that the subpoena was consistent with the Discovery Code, and that it was not unduly burdensome. After a hearing in January 2024, the trial court granted ODOT's motion to quash. Jolley then filed the instant proceeding, seeking to compel the trial court to enforce his subpoena.

STANDARD OF REVIEW

¶4 This Court may issue an extraordinary writ when a district court adjudicating a discovery dispute exceeds its authority, or issues an order that abuses its discretion. Farmers Ins. Co., Inc. v. Peterson, 2003 OK 9981 P.3d 659Christian v. Gray, 2003 OK 1065 P.3d 591

DISCUSSION

¶5 Our Legislature has promulgated rules on what evidence is admissible in a judicial proceeding (the Oklahoma Evidence Code), and what information is discoverable by the parties, in anticipation of a hearing or trial (the Oklahoma Discovery Code). In short, the scope of discovery is somewhat broader than the scope of admissible evidence. This allows litigants to discover information that, while perhaps not itself admissible in a court of law, could reasonably lead to the discovery of admissible evidence. See 12 O.S. § 3226

¶6 In a judicial proceeding, a witness's credibility may be attacked in several ways. See 12 O.S. § 2608-09. But inquiry is subject to the trial court's discretionary power to exclude even relevant evidence, if its probative value is substantially outweighed by unfair prejudice, needless repetition, or confusion of the issues. 12 O.S. § 2403Braden v. Hendricks, 1985 OK 14695 P.2d 1343Id.

¶7 Expert witnesses pose unique challenges. They are essential in evaluating complicated scientific, financial, or other information beyond the layman's understanding. They can advise parties throughout the litigation, and they can translate their findings and opinions to the factfinder during trial. Yet it is universally understood, even by the lay juror, that expert witnesses are usually compensated by the party that sponsors them. How much information about an expert's personal financial history is reasonably necessary to shed light on his or her potential for bias?

¶8 Our Discovery Code has a specific provision regarding the discovery of financial information relevant to expert witnesses. At issue here is whether that provision is intended to be the exclusive method of obtaining such information, or merely a suggested avenue. Jolley argues that because bias is always relevant to a witness's credibility, and because an expert witness usually is paid to provide an opinion, an opposing party is entitled to see a broad swath of the expert's financial history. We believe Jolley's method, and the scope of his request, are contrary to legislative intent.

¶9 The General Provisions section of the Discovery Code, 12 O.S. § 322612 O.S. § 322612 O.S. § 3251

¶10 Section 3226(B) of the Discovery Code is entitled, "DISCOVERY SCOPE AND LIMITS." The limitations to the general provisions in subsection A are broken down into general limitations for all relevant evidence, limitations on the frequency and extent of requests, what materials may be subject to privileges, and -- most pertinent here -- a specific subsection on discovery pertaining to expert witnesses. The discovery of facts known and opinions held by an expert, including bias in the formulation of those opinions, can be discovered "only as follows" using the means listed. 12 O.S. § 322612 O.S. § 3226subject to [the] scope of this section." 12 O.S. § 3226

¶11 The Discovery Code allows inquiry into how much the expert expects to make in the instant case. Jolley's request included, inter alia, the production of recent IRS 1099 forms for any work Grace, or any entity wholly or partially owned by him, had performed for "any governmental entity, lawyers and/or law firm." This is beyond what the Code allows. The Code permits a party to discover all other cases the expert has worked on in the past four years -- regardless of type, and regardless of what type of litigant the expert worked for. But the Code does not require the expert (or anyone else) to provide documentation on how much he or she was paid in those cases. In delineating the scope of discovery, the Code considers "the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." 12 O.S. § 3226

¶12 We stress that our holding is based on the Discovery Code's proviso regarding expert witness compensation as it generally pertains to the issue of bias. Subpoenas duces tecum may certainly be appropriate where a non-party possesses financial information that is central to the issues in the case. See e.g. Royal Hot Shot Investments, Inc., v. Keeton, 2024 OK 70

ORIGINAL JURISDICTION PREVIOUSLY ASSUMED;
WRIT OF PROHIBITION DENIED

CONCUR: ROWE, C.J., KUEHN, V.C.J., and WINCHESTER, EDMONDSON,
COMBS, GURICH, DARBY and KANE, JJ.

FOOTNOTES

duces tecum have generally been defined as the process to cause a witness to appear at a certain time and place to give testimony, and it compels the person to produce physical evidence such as books, papers, and other documents or tangible things relevant thereto. See generally Rice v. State Bd. of Med. Examiners, 1953 OK 143257 P.2d 292